**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EISA AFSHARINEJAD,<br><br>Plaintiff,<br><br>v.<br><br>SEYED TAHER KAMELI; KAMELI LAW GROUP, LLC; KAMELI LAW, P.C.; ARTHUR HICKSON; COASTAL TREATMENT FUND, LLC; and COASTAL TREATMENT CENTER NOKOMIS, LLC,<br><br>Defendants. | ) | Case No. 25-cv-7363<br><br>Honorable Joan B. Gottschall |

**MEMORANDUM OPINION AND ORDER**

In 2018, plaintiff Eisa Afsharinejad, a foreign national residing in Iran, invested $500,000 in a project to develop a rehabilitation facility located in Florida. *See* Compl. ¶¶ 1–5, 10, 21, 23–24, Dkt. No. 1. Through this investment, Afsharinejad sought to satisfy the then-applicable criteria for the EB-5 program, which provides a pathway to lawful permanent resident status for noncitizens who invest either $500,000 or $1 million and satisfy certain criteria, including creation of at least ten direct or indirect jobs for qualified U.S. workers. *See* Compl. ¶ 5; *see generally Doe v. McAleenan*, 929 F.3d 478, 480–82 & nn.2–5 (7th Cir. 2019); *SEC v. Kameli*, 373 F. Supp. 3d 1194, 1196–97 (N.D. Ill. 2019) (both providing background on the EB-5 program as it existed in 2018).

After the project failed to produce the desired results and Afsharinejad's EB-5 visa application was denied, he filed this lawsuit.[1] The complaint names as defendants Afsharinejad's

---

[1] The complaint grounds this court's jurisdiction over the subject matter on the grant of diversity jurisdiction in 28 U.S.C. § 1332(a). Compl. ¶ 18. However, Counts I and II arise under federal statutes and therefore properly invoke federal question jurisdiction under 28 U.S.C. § 1331. Supplemental jurisdiction extends to all state-law claims that form part of the "same case or controversy" for purposes of Article III of the Constitution. 28 U.S.C. § 1367(a). Supplemental jurisdiction generally requires a "loose factual connection" between the claims. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674 (7th Cir. 2014) (quoting *Baer v. First Options of Chi., Inc.*, 72 F.3d 1294,
(continued on next page)

immigration attorney and his law firm entities, Seyed Taher Kameli; Kameli Law, P.C; and Kameli Law Group, LLC (collectively "Kameli defendants"); two Florida limited liability companies involved in developing the rehabilitation facility, Coastal Treatment Fund, LLC ("Coastal") and Coastal Treatment Center Nokomis, LLC ("CTCN"); as well as Arthur Hickson, a citizen of Texas and Florida, Coastal's manager (collectively "Coastal defendants"). *See* Compl. ¶¶ 11–18.

Four motions are before the court. Kameli defendants move to dismiss the complaint for failure to state a claim upon which relief can be granted. Kameli Mot. Dismiss, Dkt. No. 40. Coastal defendants have filed a motion to dismiss the complaint on several grounds, including lack of personal jurisdiction. *See* Coastal Mot. Dismiss 1–2, Dkt. No. 31. Alternatively, Coastal defendants ask the court to transfer this case to the Middle District of Florida in accordance with forum selection clauses in their contracts with Afsharinejad. *See* Coastal Mot. Dismiss 3. In two separate motions, all defendants collectively seek a stay of discovery while this court decides their motions to dismiss or to transfer. Coastal Mot. Stay, Dkt. No. 62; Kameli Mot. Stay, Dkt. No. 64. The Kameli defendants' presence in Illinois constitutes this case's primary Illinois connection. Plaintiff resides in Iran and has sued Florida and Texas citizens about an investment in a Florida project. For the reasons explained below, the court concludes that it lacks personal jurisdiction over Coastal defendants and transfers this case to the Middle District of Florida under 28 U.S.C. § 1404(a).

## I. BACKGROUND

The complaint's claims arise under § 10(b) of the Securities Act of 1934; SEC Rule 10b-5; and § 20 of the Exchange Act; as well as under state law, specifically breach of fiduciary duty; aiding and abetting breach of fiduciary duty; conversion; unjust enrichment; civil conspiracy; breach of contract; breach of the implied covenant of good faith and fair dealing; and

---

1299 (7th Cir.1995)). The claims pleaded in Afsharinejad's complaint here satisfy this requirement and the complaint therefore invokes this court's subject matter jurisdiction. *See id.* at 683–84.

legal malpractice (against Kameli defendants). *See* Compl. 9–16. The court begins with the statutory and regulatory background.

**A. Statutory and Regulatory Background**

In *Doe*, the Seventh Circuit described the aspects of the EB-5 program as it existed when Afsharinejad applied on April 2, 2018:[2]

> The EB-5 program . . . requires an alien investor to make an investment of at least $500,000 for a new commercial enterprise located in a rural or high-unemployment area and $1,000,000 for a new commercial enterprise located in an area with an unemployment rate significantly below the national average. The enterprise can be the creation of a new business, a purchase of an existing business with substantial restructuring or reorganization, or the substantial expansion of an existing business. The enterprise must create full-time employment for a minimum of ten qualified employees. *See generally* 8 U.S.C. § 1153(b)(5); 8 C.F.R. § 204.6.
>
> * * * *
>
> Immigrant investors seeking to qualify for an EB-5 visa may make either direct investments into a business or can invest through a business designated by USCIS [U.S. Citizenship and Immigration Services] as a "regional center." Regional centers are essentially clearinghouses for eligible investment opportunities. As the USCIS Policy Manual states, "The regional center model can offer an immigrant investor already defined investment opportunities, thereby reducing the immigrant investor's responsibility to identify acceptable investment vehicles." With respect to the proof of capital at risk, direct investments and regional center investments have identical requirements. However, for the purpose of the job-creation requirement, direct investments and regional center investments have one important difference. Direct investment can only satisfy the job-creation requirement with the creation of direct jobs, *i.e.*, new positions within the new commercial enterprise itself. For a petition filed on the basis of jobs already created, a petitioner submits relevant tax records, for example, documenting direct hires. 8 C.F.R. § 204.6(j)(4)(i)(A). By contrast, investments through regional centers allow

[2] Congress and U.S. Customs and Immigration Enforcement have made several changes to the EB-5 program since Afsharinejad submitted his I-526 application in 2018. *See* 84 Fed. Reg. 35,750 (July 24, 2019) (eff. Nov. 21, 2019; the EB-5 Reform and Integrity Act of 2022, Pub. L. No. 117-103, div. BB, 136 Stat. 49, 1070–109 (2022)); *Sunshine State Reg'l Ctr., Inc. v. Dir., US Citizenship & Immigr. Servs.*, 143 F.4th 1331, 1334–35 & n.1 (11th Cir. 2025) (discussing and tracing the history of the EB-5 program and statutory and regulatory changes); *Mirror Lake Vill., LLC v. Wolf*, 971 F.3d 373, 374–75 (D.C. Cir. 2020). Afsharinejad filed his I-526 application on April 4, 2018, so the rules in effect at that time applied to his application. *See* Compl. 29; Notice of Intent to Deny 3, Compl. Ex. 4, Dkt. No. 1-4.

> EB-5 applicants to satisfy the job-creation requirement with either direct or indirect positions. An indirect job is one held outside of the new commercial enterprise but created as a result of the new commercial enterprise. An alien who chooses to rely on such indirect, economic-impact-based employment must use an approved economic methodology to establish that the requisite number of jobs have been or will be created. *See id.* § 204.6(m)(7)(ii).

*Doe*, 929 F.3d at 480–81 (citation modified); *see Kameli*, 373 F. Supp. 3d at 1196–97.

**B. Factual Allegations**

The following alleged facts are drawn from the complaint and its exhibits. Represented by Kameli, Afsharinejad invested $500,000 in defendant Coastal, which was intended to serve as the regional center. *See* Compl. ¶¶ 22–23. Coastal, in turn, agreed to loan defendant CTCN up to $2 million "to purchase real estate, and develop, construct/renovate, apply and obtain appropriate licenses, and operate a building, in Nokomis, Florida . . . as a rehab facility that will provide rehabilitation services to individuals (the "Project")." Compl. ¶ 23 (citing Private Placement Memorandum (PPM) 6, Compl. Ex. 1). The project's PPM states, "It is intended that the Project will create 10 fulltime [sic] equivalent positions from revenue as well as indirect and/or induced construction positions and/or any other method acceptable to the United States government for qualifying employees for each $500,000.00 of EB-5 investment funds loaned to CTCN." *Id.*

The complaint alleges that at the time Afsharinejad made his investment, Kameli concealed the fact that Christopher Fox, the president of CTCN, was convicted in 2011 of defrauding California homeowners out of approximately $6 million, and the fact that, on June 22, 2017, the Securities and Exchange Commission had filed an enforcement action against Kameli, his law firm, and several relief defendants. Compl. ¶¶ 34–40; *see* Compl., *see SEC v. Kameli, et al.*, No. 17-cv-4686 (N.D. Ill. June 22, 2017) (Gottschall, J.). The SEC alleged (Kameli disputes this and agreed to the entry of a consent judgment) that "Kameli induced numerous foreign investors to invest in multiple EB-5 entities, to accumulate EB-5 investor funds and improperly operate, divert, commingle, and/or use portions of those funds to benefit

himself or other projects located in Illinois and Florida." Compl. ¶ 34 (citing Second Am. Compl. ¶¶ 5–12, *SEC v. Kameli, et al.*, No. 17-cv-4686 (N.D. Ill. May 13, 2019) (Dkt. No. 192); *see also* Consent J. *id.* (Jan. 24, 2022) (Dkt. No. 243)).[3]

Among other exhibits, Afsharinejad attached to his complaint two documents involved in his investment transaction: the project's PPM dated October 2017, Compl. Ex. 1, Dkt. No. 1-1, and a Subscription Agreement dated March 23, 2018, Compl. Ex. 2, Dkt. No. 1-2. The parties focus their briefing on the following provisions of the Subscription Agreement:

> 8. General Provisions.
>
> 8.1 Choice of Law; Forum. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida. Subject to the arbitration provision in Section 8.11 infra, any suit or proceeding arising from or relating in any way to the subject matter or this Agreement shall be brought only in the courts, state and federal. located in the State of Florida.
>
> * * * *
>
> 8.11 Arbitration. Any dispute arising under or in connection with this Agreement will be settled by arbitration as set forth in this Section 8.11. No legal right of action may arise out of any such dispute until arbitration has been completed. Each party, however, will have full access to the courts to compel compliance with these arbitration provisions, to enforce an arbitration award or to seek injunctive relief, whether or not arbitration is available or under way [sic].

Subscription Agreement 9, 11. The loan agreement attached to the complaint includes an overlapping forum selection clause. It reads:

> 10.14 CONSENT TO JURISDICTION & SERVICE OF PROCESS; WAIVER OF JURY TRIAL.
>
> ALL JUDICIAL PROCEEDINGS BROUGHT AGAINST BORROWER WITH RESPECT TO THIS AGREEMENT MAY BE AND ALL JUDICIAL PROCEEDINGS BROUGHT BY BORROWER WITH RESPECT TO THIS AGREEMENT SHALL BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION

---

[3] This sentence presumably means that Kameli, not the investor, accumulated, operated, diverted, etc.

> HAVING SITUS IN PINELLAS COUNTY, FLORIDA, AND BY EXECUTION AND DELIVERY OF THIS AGREEMENT, BORROWER ACCEPTS, FOR ITSELF AND IN CONNECTION WITH THE PROPERTY, GENERALLY AND UNCONDITIONALLY, THE JURISDICTION OF THE AFORESAID COURTS, AND IRREVOCABLY AGREES TO BE BOUND BY ANY FINAL JUDGMENT RENDERED THEREBY FROM WHICH NO APPEAL HAS BEEN TAKEN OR IS AVAILABLE. . . .

Loan Agreement at 31 § 10.14, Dkt. No. 1-3.

### C. The Hickson Affidavit

Coastal defendants support their motion to dismiss for lack of personal jurisdiction with defendant Hickson's affidavit. *See* Hickson Aff., Dkt. No. 32-1. Afsharinejad has submitted no evidence contradicting Hickson's affidavit. Hickson avers that he is a Texas citizen who has never owned any real or personal property in Illinois; that he has never attended a trade show in Illinois; that he has never worked for an employer located in Illinois; that he is not a member of any partnership, limited liability company, or limited liability partnership with an Illinois member; and that his most recent contact with Illinois consisted of catching a connecting flight from Texas to New York in O'Hare Airport. *See* Hickson Aff. ¶¶ 1–3, 6–9, 18–19.

Regarding defendant Coastal, which Hickson refers to as "CTF," he states, "CTF has never sent any funds to Illinois. CTF's bank accounts never had any signatories in Illinois. . . CTF has never conducted business in Illinois. Since its inception, CTF has never had a relationship with any clients, investors, or suppliers located in Illinois. CTF has never delivered any products to Illinois. CTF has never owned or leased real estate in Illinois." Coastal Defs.' Mem. Supp. Mot. Dismiss 2, Dkt. No. 32.

## II. Personal Jurisdiction

Relying on Hickson's affidavit, Coastal defendants move under Federal Rule of Civil Procedure 12(b)(2) to dismiss for lack of personal jurisdiction. On a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing personal jurisdiction. *Citadel Grp., Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008). If no evidentiary hearing is held and the motion is decided on written materials submitted by the parties, as is the case here, the plaintiff must make

only a *prima facie* case of personal jurisdiction. *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015) (citing *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). At this procedural stage, the court must resolve any factual disputes in the plaintiff's favor. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014).

The record here provides no factual disputes to resolve, as Hickson's affidavit has not been disputed or controverted. The following rule therefore applies: "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Rsch.*, 338 F.3d at 783 (citations and footnote omitted); *see, e.g.*, *Hunter Tech. Corp. v. Omega Glob. Techs., Inc.*, 505 F. Supp. 3d 802, 805–06 (N.D. Ill. 2020); *Rebel Hosp. LLC v. Rebel Hosp. LLC*, 2022 WL 797035, at *2 (N.D. Ill. Mar. 16, 2022). The court "accept[s] as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff." *Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009) (citation omitted).

Illinois's Long Arm statute extends personal jurisdiction over out-of-state litigants to the limits set by the Fourteenth Amendment's Due Process Clause and by the Illinois Constitution. *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 590–91 (7th Cir. 2021) (citing 735 Ill. Comp. Stat. § 5/2-209(c); other citations omitted). The Due Process Clause authorizes courts to exercise personal jurisdiction over out-of-state defendants who have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash. Off. of Unemp. Comp. and Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A defendant's contacts with the forum state must be such that it could "reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

The Supreme Court has recognized "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked)

jurisdiction." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (citing *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Afsharinejad does not argue that this court possesses general jurisdiction over Coastal defendants, so the court proceeds to specific, case-linked jurisdiction. *See Myer ex rel. B.D. v. Samsung SDI Co., Ltd.*, 91 F.4th 856, 860–61 (7th Cir. 2024) (per curiam).

"For specific personal jurisdiction, there must be: (1) purposeful availment—the defendant must have purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the forum; (2) relatedness—the alleged injury must arise out of or relate to the defendant's forum-related activities; and (3) fairness—the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Id.* at 861 (citing *Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021); other citation omitted).

As discussed above, the averments of Hickson's affidavit stand uncontradicted and must therefore be taken as true. Stated plainly, Hickson denies he or Coastal having ever had any suit-related contacts with Illinois. *See* Hickson Aff. ¶¶ 2–23. Specifically, Hickson, Coastal's sole member, "never visited anyone in Illinois in relation to any of the alleged transactions or events described in Plaintiff's Complaint." *Id.* at ¶ 18. Paragraph thirteen of Hickson's affidavit denies that Afsharinejad's financial investments in Coastal passed through a financial institution located in Illinois:

> 13. To the extent any capital contributions were allegedly sent by or on behalf of Plaintiff to CTF, those funds were always wired directly to CTF's bank accounts from overseas. All funds that were wired to CTF's bank accounts at any time from any source were always received CTF [sic] at CTF's banks' branches located in either California or Texas. CTF has never sent any funds to Illinois. CTF's bank accounts never had any signatories in Illinois.

*Id.* ¶ 13.

Afsharinejad argues that personal jurisdiction in Illinois is proper based on the complaint's allegations that Coastal defendants associated and conspired with Kameli

defendants. *See* Resp. Opp'n Coastal Defs.' Mot. Dismiss 6–8, Dkt. No. 60. This argument fails first and foremost because Afsharinejad has not gone "beyond" the allegations of the complaint concerning conspiracy, which Seventh Circuit caselaw requires him to do in order to defeat Hickson's affidavit. *See Purdue Rsch.*, 338 F.3d at 783. Second, Afsharinejad makes no effort to distinguish the Seventh Circuit's decision in *Smith v. Jefferson County Board of Education*, 378 F. Appx. 582, 585–86 (7th Cir. 2010) (unpublished), on which Coastal defendants rely in their motion to dismiss. *Compare* Coastal Defs.' Mem. Supp. Mot. Dismiss 6, *with* Resp. Opp'n Coastal Defs.' Mot. Dismiss 6–8.

Construing Illinois's Long Arm statute, the *Smith* court stated that Illinois courts appear to have rejected a conspiracy theory of personal jurisdiction under which "personal jurisdiction is proper over an out-of-state defendant in a forum where one of his co-conspirators has acted as the defendant's agent in furtherance of the conspiracy." *Id.* at 585 (citations omitted). Moreover, even if it remains a viable theory, the conspiracy theory of personal jurisdiction does "not permit a plaintiff to draw a defendant into court in Illinois simply by alleging a conspiracy that includes some Illinois defendants and some out-of-state defendants, while making no effort to connect the two." *Id.* at 586.

Afsharinejad has not shown how the complaint's bare allegations of conspiracy are distinguishable. *See* Resp. Opp'n Coastal Defs.' Mot. Dismiss 6–8. He points instead to the complaint's generalized allegations of Kameli defendants' involvement in drafting the subscription agreement, which are made upon information and belief. Compl. ¶ 7 ("[Kameli defendants] acted as Plaintiff's immigration attorneys and, upon information and belief, were involved in drafting the offering documents for Plaintiff's investment in Coastal."). This single allegation made on information and belief does not carry Afsharinejad's burden to show this court possesses personal jurisdiction over Coastal defendants, where, as here, they have come forward with a nonconclusory affidavit contesting personal jurisdiction. *See Unicolors, Inc. v. Shewin Flagship Shops*, 2024 WL 4567268, at *6 (N.D. Ill. Oct. 24, 2024) (Gottschall, J.); *Rubik's Brand, Ltd. v. Sched. A Defs.*, 2021 WL 825668, at *2 (N.D. Ill. Mar. 4, 2021).

For the reasons given above, Afsharinejad has not carried his burden to make out a *prima facie* case of personal jurisdiction over Coastal defendants.

## III. Forum Selection Clauses

Coastal defendants make two arguments based on the forum selection clauses in the loan agreement and the Subscription Agreement. The first concerns procedure and shapes the analysis.

### A. Procedural Standard

Coastal defendants utilize Federal Rule of Civil Procedure 12(b)(3), improper venue, as the vehicle for enforcing the forum selection clauses at issue. *See* Coastal Defs.' Mem. Supp. Mot. Dismiss 10. They do not cite *Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas,* which holds that "Although a forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of [28 U.S.C.] § 1406(a) or Rule 12(b)(3), the clause may be enforced through a motion to transfer under [28 U.S.C.] § 1404(a)." 571 U.S. 49, 59 (2013); *see also IAC/InterActiveCorp v. Roston*, 44 F.4th 635, 645 (7th Cir. 2022). Coastal defendants seek a § 1404(a) venue transfer in the alternative to outright dismissal, Coastal Defs.' Mem. Supp. Mot. Dismiss 10, so the forum selection issue must be analyzed under the venue transfer statute, § 1404(a).

### B. Scope of the Forum Selection Clause

Before analyzing venue transfer, the court addresses Afsharinejad's argument against enforcing the forum selection clause in the subscription agreement. Section 8.1 of the subscription agreement reads: "This Agreement shall be governed by and construed in accordance with the laws of the State of Florida. Subject to the arbitration provision in Section 8.11 *infra*, any suit or proceeding arising from or relating in any way to the subject matter or this Agreement shall be brought only in the courts, state and federal. located in the State of Florida." Subscription Agreement 9. Citing no legal authority, Afsharinejad maintains that the phrase "subject to the arbitration provision in Section 8.11" should be read as qualifying

the entire forum selection clause, such that the requirement to file in Florida applies only to arbitration-related disputes. *See* Resp. Opp'n Coastal Defs.' Mot. Dismiss 13. Since the claims in the complaint do not present an arbitration dispute, Afsharinejad reasons that the forum selection clause does not apply. *See id.*

In construing a contract, the court's "basic objective . . . is to give effect to the intent of the parties involved." *Sanislo v. Give Kids The World, Inc.*, 157 So. 3d 256, 263 (Fla. 2015) (quoting *Univ. Plaza Shopping Ctr. v. Stewart*, 272 So. 2d 507, 511 (Fla. 1973)). "As a general principle, the trial court must honor a mandatory forum selection clause in a contract in the absence of a showing that the clause is unreasonable or unjust." *Mgmt. Comput. Controls, Inc. v. Charles Perry Const., Inc.*, 743 So. 2d 627, 631 (Fla Ct. App. 1999) (citing *Manrique v. Fabbri*, 493 So. 2d 437 (Fla. 1986)). No such showing has been made or argued in the case at bar.

The Florida Supreme Court has recognized that the phrase "subject to" (actually "shall be subject to" in the case cited) does not have a "fixed construction . . . and its interpretation depends upon the context in which it is found." *Allstate Ins. Co. v. Orthopedic Specialists*, 212 So. 3d 973, 978 (Fla. 2017) (collecting and discussing cases). Nonetheless, the context in which the phrase "subject to" appears has been held to render the phrase unambiguous. *See id.* at 978–79. In *Allstate*, the Florida Supreme Court ruled that the phrase "shall be subject to" had but one reasonable meaning: "[T]he only reasonable interpretation of the phrase 'shall be subject to' is as a mandatory command." *Id.* at 979.

An intermediate Florida appellate court analyzed a contractual provision similar to the one at issue here in *St. Augustine Pools, Inc. v. James M. Barker, Inc.*, 687 So. 2d 957, 958 (Fla Ct. App. 1997); *see also Allstate*, 212 So. 3d at 978 (quoting *Barker* with approval). At issue was the following language in ¶ 16 of a subcontracting agreement: "This Agreement is subject to the General Contract between the Owner and General Contractor." *Id.* at 958. The general contract included an arbitration clause. *See id.* After discussing the potential ambiguity of the phrase "subject to," the *Barker* court held, "When read as a whole, paragraph 16 indicates that the general contract is referenced solely to make the subcontractor aware of its duties and

requirements. The subcontractor does not have a duty or requirement to arbitrate any disagreements." *Id.*

Like the cross-reference in *Barker*, the cross-reference in ¶ 8.1 of the Subscription Agreement ("subject to the arbitration provision in Section 8.11, *infra*") provides notice of the applicability of the arbitration clause but does not narrow the forum selection clause's application to disputes concerning arbitration. If the forum selection clause were limited to arbitration disputes, the peculiar result would appear to be that a motion to compel arbitration could not be heard in a forum outside Florida. It is unlikely that the parties intended such a result. Accordingly, the court rejects Afsharinejad's construction of § 8.1 and 8.11 of the Subscription Agreement and finds that the forum selection clause applies to the claims alleged in his complaint.

**C. Venue Transfer**

Having found that a valid forum selection clause applies to plaintiff's claims against Coastal defendants, the court turns to the question of whether to transfer this action to the Middle District of Florida, as Coastal defendants request. Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In addition, if a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other court in which the action or appeal could have been brought at the time it was filed or noticed." *North v. Ubiquity, Inc.*, 72 F.4th 221, 226 (7th Cir. 2023) (citing 28 U.S.C. § 1631) (citation modified). The term "jurisdiction" in § 1631 "includes both subject matter and personal jurisdiction." *Id.* at 227. "[W]hen federal courts find that they lack jurisdiction, they bear an independent obligation under § 1631 to consider whether to transfer the case—even if neither party requests transfer." *Id.* at 228 (quotation on p. 228). This court has found a lack of personal jurisdiction over the Coastal defendants but not Kameli defendants.

The Supreme Court held in *Atlantic Marine* that "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). The presence of a valid forum selection clause alters the usual § 1404(a) balancing by giving the plaintiff's choice of forum "no weight;" instead, "as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 63–64 (quotation in p. 63). "Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." *Id.* at 64. That rule disposes of Afsharinejad's only argument against a § 1404(a) transfer, namely, that Kameli defendants (who have not argued this) will be prejudiced if they are required to defend this suit in Florida or if the action is severed so that a defense in Illinois and Florida is required. *See* Resp. Opp'n Coastal Defs.' Mot. Dismiss 13–14.

No party has requested severance of claims or parties, however, so this part of the argument is a red herring. And to the extent Afsharinejad asserts the Kameli defendants' private interests, *Atlantic Marine* forecloses this argument. 571 U.S. at 65. The parties have not developed any arguments concerning the public interest factors and/or choice of law rules. *See id.* at 65–66.

For these reasons, Afsharinejad has not carried his burden to show that extraordinary circumstances weigh against transfer under § 1404(a) and *Atlantic Marine*. Because the parties have selected another forum to resolve the merits of their dispute, this court declines to reach several arguments the parties have briefed. These include all arguments in support of dismissal made by Kameli defendants, as well as Coastal defendants' Rule 12(b)(7) motion to dismiss the complaint for failure to join a necessary party. These issues remain open to the parties following transfer, and therefore will be denied without prejudice and with leave to reinstate arguments on which this order does not rule.

## IV. CONCLUSION

For the reasons stated, Coastal defendants' motion to dismiss the complaint, Dkt. No. 31, is granted in part. This court concludes that it lacks personal jurisdiction over Coastal defendants and transfers this action to the United States District Court for the Middle District of Florida under the authority of 28 U.S.C. § 1404(a). Kameli defendants' motion to dismiss the complaint, Dkt. No. 40, is denied without prejudice and with leave to reinstate following transfer of this action. Defendants' separate motions to stay, Dkt. Nos. 62 and 64, pending the court's ruling on the instant motions to dismiss the complaint are denied as moot.

Date: September 22, 2026

/s/ Joan B. Gottschall
United States District Judge